CHARLES T. CANDEE vs. JAMES F. PENNIMAN AND OTHERS.

The act of 1850, (Stat., ed. 1854, p. 139,) provides that in suits by foreign attachment the plaintiff shall be entitled to all the security which his debtor has for the debt attached. A debt attached consisted of certain bonds of a corporation, owned by the debtor, which with others were secured by a mortgage of the real estate of the corporation, situated in this state, to certain persons as trustees for the bondholders. The bonds in question were also pledged at a bank in the city of New York as security for a debt of less amount than their value. The corporation had gone into insolvency and a bill for a foreclosure had been brought by the trustees for the bondholders and was pending when the factorizing suit was brought. The factorizing process was served on the corporation and on the trustee in insolvency. While this suit was pending, the trustee in insolvency sold the property for more than enough to pay the bonds and paid over the amount of the bonds to the trustees for the bondholders. Held, upon a bill in equity brought by the factorizing creditor, while his attachment was still pending, against the trustees for the bondholders, the bank, and other parties interested, that under the above act the petitioner was entitled to the benefit of the money held by the trustees for the payment of the bonds belonging to the debtor, after satisfying the lien of the bank, and that equity would aid him by enjoining the trustees against paying any more of the money to the bank than was necessary to satisfy its lien, and by ordering an account taken of the amount due to the bank, and by requiring the trustees to hold the surplus to abide the event of the factorizing suit.

BILL IN EQUITY. The bill alleged that the Beacon Dam Company, a manufacturing corporation located in this state, issued its bonds for sale in the market, to the amount of $50,000, payable in New York city, and secured them by a mortgage of its real estate, situated in this state, to James F. Penniman of the city of New York, Curtis B. Raymond of the city of Boston, and Leverett Candee of the city of New Haven, in trust for the benefit of the bondholders ; that Gorham D. Abbott of the city of New York became the holder of $5,000 of the bonds, of which he pledged $4,000 to the Broadway Bank, in the city of New York, as collateral security for a debt due from him to the bank, and $1,000 to the copartnership of Kellogg & Parker of New York city, for a similar purpose ; that the Beacon Dam Company afterwards went into insolvency, and William B. Bristol of New Haven was appointed trustee of the insolvent estate ; that the trustees for the bondholders instituted proceedings for a foreclosure of the mortgage, and that while they were pending, under an arrangement made by the parties and under an order of the probate court, the property was sold by the trustee in insolvency for a greater sum than the amount of the bonds and the interest due upon them, and the whole amount so due was by the trustee in insolvency paid over to the trustees for the bondholders, who now held in their hands the necessary amount for the payment of the bonds belonging to Abbott ; that prior to the sale and after the Beacon Dam Company had gone into insolvency, and while the insolvent proceedings were pending, the petitioner, to whom Abbott was indebted in the sum of $2,500, brought an action of foreign attachment against him in this state, for the purpose of attaching the amount due him upon the bonds so owned by him, causing factorizing service to be made upon the corporation and upon the trustee in insolvency ; that the Broadway Bank and Kellogg & Parker claimed that the whole amount due on the bonds of Abbott should be paid over to them, and were not willing to accept the amounts of their several liens, and that the trustees for the bondholders or some of them threatened so to pay over the amount of the bonds to the bank and to Kellogg & Parker, claiming that

the bonds, being payable to bearer, must be paid to them as the bearers thereof; that the amounts due to the bank and to Kellogg & Parker were not known to the petitioner and could not be ascertained except by a disclosure and an account taken; and that he was without adequate remedy at law for the enforcement of his claim upon the money so due upon the bonds, after the liens of the pledgees were satisfied. The bill therefore prayed that the trustees for the bondholders might be enjoined against paying over to the Broadway Bank and to Kellogg & Parker any greater amount than the amount of their several liens, that the bank and Kellogg & Parker be required to disclose as to the amounts of their liens and that an account might be taken thereof, and that the balance after satisfying the liens might be held by the trustees to abide the result of the factorizing suit and the further order of the court.

The trustees for the bondholders, the trustee in insolvency, Abbott the debtor, the Broadway Bank and Kellogg & Parker were made respondents.

The defense was assumed by the three last named respondents, who severally demurred to the bill, and the questions arising on the demurrer were reserved by the superior court for the advice of this court.

*Doolittle,* in support of the demurrer.

1. The bill discloses that the petitioner had a note against Abbott, and that he sued it, and garnisheed the Beacon Dam Company and the trustee in insolvency. If the garnishees did not owe Abbott, then he clearly has no relief. If the garnishees did owe him, then the petitioner has a clear remedy at law by his action of scire facias.

2. But it is said that the statute of 1850, which provides "that in suits by foreign attachment the plaintiff shall be entitled to all the security which the debtor has for the debt attached," entitles the petitioner to the relief he seeks. According to his statement in the bill, and his claim, the security was the land. This is what was pledged to secure the debt. The bond is mere evidence of the debt. The deed is the

Candee *v.* Penniman.

instrument by which the security is pledged. But by his bill he seeks no remedy against the land. He asks that certain trustees may be restrained from paying over money which has been paid to them voluntarily, which it is their manifest duty to pay to the bondholders, whoever they may be. If these trustees owe Abbott the petitioner may garnishee them ; his remedy at law is adequate. If the trustees pay the Broadway Bank and Kellogg & Parker, bona fide holders of the bonds before maturity, in accordance with the deed, and upon such payment there is a balance due Abbott, then he can garnishee the bank and Kellogg & Parker. In every conceivable point of view there is adequate remedy at law. At all events, equity can not interfere to confer new rights. *Judah* v. *Judd,* 1 Conn., 309. If the garnishees pay the debt attached to the debtor, such payment will not protect them, and the remedy is adequate at law by scire facias. Neither does the payment of the debt attached affect the security. The petitioner, who is now a mere attaching creditor before judgment, after judgment will cause execution to be issued, and if neither Abbott nor the garnishees pay the judgment, he has his remedy at law by scire facias, or, if he wishes to avail himself of the security, his bill of foreclosure to take the land. An injunction will not lie to restrain the original garnishee from paying the debt attached to the debtor. If he pays the debt he does it at his peril, and has not thereby relieved himself from liability to the attaching creditor. Suppose the garnishee, instead of paying the debt attached to the debtor himself, sends the money by an agent to the debtor, no injunction will lie to prevent the agent paying to the debtor or the creditor from receiving it. The garnishee may assume this risk, of being subsequently called upon to respond to a judgment which may be recovered. Suppose he is willing to take the risk and to rely upon the solvency of the debtor ; can a court of equity interfere to prevent this ? And yet a court of equity is asked to interfere by the extraordinary process of injunction, and restrain, not the garnishee, but a trustee, a mere agent for the payment of money. Now it is not the garnishees or the trustees who ask the protection of the court, or its interference

in their behalf, by way of interpleader, to ascertain to whom this debt shall be paid ; but it is an attaching creditor who asks the court to interfere, to prevent a debtor from paying a creditor, when such payment, by the positive provisions of the statute, can affect no right of his. The attaching creditor's right to appropriate the debt in the manner indicated by the statute, and his right to the security remain the same. It is not alleged or pretended that Abbott is insolvent, or that the creditor has any reason to apprehend that he will be. Again, neither of the parties to this trust or mortgage deed ask the court to advise them in the execution of this trust. All they ask is for the court to let them alone, and if any one has a claim upon them by force of a statute, which at the same time directs what course he shall pursue in the enforcement of his claim, let him pursue the course indicated by the statute.

3. The bill is premature. The petitioner has now simply brought a suit, which is defended, and attached this debt. *Non constat* that he will recover a judgment, and if he does he must take out an execution and make demand of Abbott, who is wealthy, and *non constat* but that he will pay it. There is then no existing ground for this bill to rest upon. His right if any is merely inchoate, and it depends upon a variety of events and contingencies which have not yet transpired and are in *futuro*, whether he can ever perfect it. The petitioner must show something more than such a vague and uncertain right before he can ask a court to interfere by this extraordinary process, and put a clog upon ordinary commercial transactions. Commercial securities of the character of these bonds, in the hands of banks, are not thus to be hampered. High principles of public policy require their exemption from unnecessary restrictions upon their use and circulation.

4. The petitioner states no reason in his bill for the injunction except that he shall in a great measure lose the benefit of his factorizing process. How is he to lose it ? He has failed to point out the manner, and he can not. The payment can not affect him, for his right to the security remains the same. He says however that he may have to go to New York to secure his claim. One would suppose that it would

be quite as equitable that he should be required to go to New York to bring suit, as that he should be allowed to drag the Broadway Bank and Kellogg & Parker, who are not parties to his suit as garnishees, out of that state to settle their accounts, and become parties to a bill in equity, to enable him to perfect an attachment, which he has not shown by his bill and can not show that he shall ever have occasion to avail himself of.

5. This bill can not be sustained against the Broadway Bank and Kellogg & Parker for other reasons. They were the holders of these bonds for value before the attachment suit was commenced, and it is alleged that they received them from Abbott as collateral security for his indebtedness to them. Now, if so, they are liable to account to Abbott for the bonds or the avails. They could not surrender the bonds to the trustees upon the payment of their indebtedness; if they did they would be liable to Abbott for their full value. The petitioner says they refuse to state how much is due to them from Abbott. True, they say to the trustees, pay the bonds, that is all your duty, and you have no right to inquire further than to ascertain if we are lawful holders. Can an attaching creditor who wants to secure a debt, bring persons who are in no way parties to his suit to Connecticut to disclose their accounts? Again, when the petitioner takes the disclosure of the garnishees in his factorizing suit, he can call upon the Broadway Bank and Kellogg & Parker to testify as witnesses. This he can also do in his action of scire facias against the garnishees, or in any proceeding to secure his debt. And he can do this in New York as well as here. He is not to subject them to the costs and expenses of a suit in equity in a foreign state when he has a plain remedy at law in their own state.

*L. H. Bristol,* contra.

1. The demurrer of the respondent Abbott ought to be overruled, because the petitioner by his factorizing process acquired an interest as against him, not only in all debts due from the company to him, but also a right to all the securities held by him for the payment of those debts. The interest thus acquired was only an equitable lien, of which a court of

equity can alone take cognizance, and can be protected and made effectual to the petitioner only by the remedy sought, viz., an injunction. 1st. It is admitted by the demurrer that at the time of the factorizing process there was a debt due from the company to Abbott, evidenced by the bonds of the company, and it is further admitted that this debt was secured by a mortgage made by the company to the trustees to secure those bonds. All debts, whether by bond or otherwise, due from the company to Abbott, were secured to the petitioner by his factorizing process. Rev. Stat., tit. 1, § 241. All of Abbott's security for those debts was also secured to the petitioner by the same process. Act of 1850; Rev. Stat., ed. 1854, 139. By virtue of these statutes the petitioner, as against Abbott, gained a lien on all of Abbott's interest under the mortgage deed of trust, and became subrogated to all the rights of Abbott in that property. The change in the nature of the security by the sale makes no difference. The security itself is not changed but has merely taken on a new form. *Kip* v. *Bank of New York*, 10 Johns., 65. 2d. The lien which the petitioner thus gained on the mortgaged property, and consequently on the proceeds of its sale, was a mere equitable interest, cognizable only by a court of equity. *Moses* v. *Murgatroyd*, 1 Johns. Ch., 119, 131; *Homer* v. *Savings Bank*, 7 Conn., 478; *New London Bank* v. *Lee*, 11 id., 112; *Jones* v. *Quinnipiack Bank*, 29 id., 25; *Burn* v. *Carvalho*, 4 Mylne & Craig, 690. That the interest gained by the petitioner was simply an equitable one, appears also from the fact that by the mortgage deed of trust an express trust was created in favor of Abbott and those claiming under him. Of such express trust a court of equity has exclusive cognizance. 2 Story Eq. Jur., § 962. 3d. The petitioner has the same right to claim the interposition of a court of equity to protect his interest in the funds in the hands of the trustees during the pendency of the attachment suit, as he would have if he had already obtained judgment in that suit, because by his attachment he has acquired an equitable lien on those funds. *Carter* v. *Champion*, 8 Conn., 549; *Davenport* v. *Lacon*, 17 id., 278; *Ingraham* v. *Phillips*, 1 Day, 117; *Daven-*

*port* v. *Tilton*, 10 Metc., 320, 327 ; *Franklin Bank* v. *Bachelder*, 23 Maine, 60 ; *Kittredge* v. *Emerson*, 15 N. Hamp., 227 ; *Vreeland* v. *Bruen*, 1 Zabr., 214. 4th. The remedy sought to protect that interest, viz., by injunction, is the proper and only one. The petitioner has no adequate remedy at law. The only legal remedy which he has is by a scire facias, but a scire facias would only reach the debt due from the company ; it would not touch the security for the debt, the only thing of value, as the company is insolvent. " It is not enough that there is remedy at law. Even if the court could see that the plaintiffs have a nominal remedy at law, yet if we believe that such proceedings can not probably be made to result in any substantial advantage to the plaintiffs, they ought not to be turned round to seek such fancied legal remedy." Per Church, J., in *New London Bank* v. *Lee*, 11 Conn., 121. See also *Chipman* v. *City of Hartford*, 21 Conn., 488 ; *Middletown Bank* v. *Russ*, 3 id., 135. Nor are the trustees suable at law if they pay over the money to Abbott, even if the petitioner should recover a judgment against Abbott. The trustees could only be called to account in equity. 2 Story Eq. Jur., § 975 *a*. Abbott can not complain of the injunction, because its only effect is that of an ordinary attachment, viz., to sequester the funds in the hands of the trustees to await the result of the attachment suit. Further, this is a Connecticut fund, and a court of equity will interfere by injunction in behalf of a domestic creditor to prevent the fund from being withdrawn from this state. *Stead* v. *Clay*, 4 Russ., 550 ; *Taylor* v. *Allen*, 2 Atk., 213. When sales have been made to satisfy certain trusts and purposes, and there is danger of a misapplication of the proceeds, a court of equity will also restrain the purchaser from paying over the purchase money. *Green* v. *Lowes*, 3 Bro. Ch. R., 217 ; *Matthews* v. *Jones*, 2 Anst., 506 ; *Hawkshaw* v. *Parkins*, 2 Swanst., 539. *Hine* v. *Handy*, 1 Johns. Ch., 6 ; *Reeve* v. *Parkins*, 2 Jac. & Walk., 390.

2. The demurrer of the Broadway Bank and Kellogg & Parker ought also to be overruled and they decreed to account. 1st. Beyond the amount of the debts for which they hold the

bonds as collateral, these respondents have not only no equity superior to that of Abbott, but no interest whatever. It is admitted by the demurrer that these bonds were pledged to these respondents by Abbott for a sum in each case much less than the amount due on the bonds, and that the trustees have offered to pay them the debts which these bonds were given to secure, but that they have declined to accept the offer. By the pledge of the bonds as collateral security, they acquired a mere lien, a special property, while the general property still remains in Abbott. Story on Bailments, §§ 308, 310, 314, 345, 346 ; *Franklin* v. *Neate*, 13 Mees. & Wels., 481 ; *Tuxworth* v. *Moore*, 9 Pick., 347 ; *Hunt* v. *Holton*, 13 id., 220 ; *Whitaker* v. *Sumner*, 20 id., 399, 405 ; *Ratcliff* v. *Davis*, Yelv., 179 ; *Jones* v. *Smith*, 2 Ves. Jr., 378 ; *Cortelyou* v. *Lansing*, 2 Caines Cas., 206. And the pledgor or his assignee may bring a bill in equity for a redemption and account. Story on Bailments, § 350 ; *Kemp* v. *Westbrook*, 1 Ves., 278 ; *Hunt* v. *Ten Eyck*, 2 Johns. Ch., 62 ; *Jones* v. *Smith*, 2 Ves. Jr., 372 ; *Demandray* v. *Metcalf*, Prec. Ch., 419, 420 ; 2 Story Eq. Jur., § 1032. The petitioner by his factorizing process having become subrogated to the interest of Abbott, the pledgor, and having acquired his rights, has also a right to a redemption and account. The remedy by injunction in the present case is identical with that of a redemption. There being a money fund in the hands of the trustees, which we are entitled to redeem, by paying to the respondents their lien, a court of equity will interfere in our behalf to prevent the trustees from paying to the respondents any greater sum than the amount of their lien. 2d. The present case presents a complete illustration of the doctrine that courts of equity will take jurisdiction of bills seeking an account in the case of liens, on the ground that such jurisdiction is absolutely necessary for the purposes of justice. 1 Story Eq. Jur., § 507 ; *Hobart* v. *Andrews*, 21 Pick., 526. 3d. It is admitted by the demurrer that these respondents are foreign creditors seeking to obtain payment of the bonds out of a domestic fund. As the only right which these creditors have to this fund is a mere equitable one, as assignees of the debt for which the

fund in question is security, a court of equity in this state will not allow them to enforce this equitable right without first forcing them to do equity to domestic creditors. 1 Story Eq. Jur., § 643 ; 2 Swift Dig., 186. 4th. It is admitted that these respondents are seeking to force the trustees to pay to them the full amount of their bonds, and that the trustees were about to do so. As these respondents have no right except to the payment of their liens, they can not complain of an injunction restraining the trustees from paying more than the amount of those liens. The account sought is purely for their benefit. 5th. The whole doctrine of marshalling assets rests upon the principle sought to be enforced in the present case. 1 Story Eq. Jur., §§ 635, 636.

3. If the demurrers are sustained, the petitioner having an equitable right under the act of 1850, is utterly without the means, either at law or equity, of protecting that right. " An injunction may be granted on the application of a plaintiff in a bill for an account against a bankrupt, to restrain the assignees from making a dividend until the account has been taken." 2 Eden on Injunctions, 351.

DUTTON, J. This case stands on a demurrer to a petition in chancery. A brief statement of the principal allegations contained in it will show that the demurrer must be overruled. The petition alleges that the Beacon Dam Company issued bonds to a large amount, and mortgaged its real estate and machinery to Penniman and others as trustees, who are some of the respondents, to secure them. The corporation afterwards went into insolvency and is in fact utterly insolvent. Abbott, one of the respondents, became the owner of some of the bonds, and lodged several of them with the Broadway Bank of New York, as security for advances made by the bank to a less amount than the bonds. Candee, the petitioner, holding a note against Abbott, sued him and factorized the Beacon Dam Company as the debtor of Abbott, on account of his interest in the bonds which he had lodged with the Broadway Bank. This suit is still pending. He then called on the directors of the Broad-

way Bank to ascertain what their claim on the bonds was, but they refused to disclose the state of their account with Abbott, insisting that, as the holders of the bonds, they had a right to demand and receive the full amount of them. The mortgaged property has been sold with the consent of the Beacon Dam Company, the trustee in insolvency, and the trustees to secure the bonds, and enough of the avails is in the hands of the trustees, one of whom holding the funds resides in this state, the others residing out of the state, to pay all the bonds in full. The trustees are desirous of paying off all the bonds and of relieving themselves of the trust, and some of them insist that they have the right to do it, without regard to the rights of the petitioner. He asks that the directors of the Broadway Bank may be required to disclose the situation of their account with Abbott, and that the trustees may be enjoined from paying the bonds to the bank, and may be required to retain enough of the funds which they have received from the sale of the mortgaged property to satisfy any judgment which he may recover in his suit against Abbott. He makes no claim to the bonds except as subject to the just demands of the bank, and the trustees are ready and willing to pay the bank whatever is justly due, whenever that can be ascertained.

On this state of facts, which the demurrer admits, we think the petitioner is clearly entitled to relief. The action both of the legislature and of the courts in this state, has been in favor of the application of all a debtor's property, except necessaries, to the payment of his debts.

If Abbott had retained his bonds in his own hands, he would have been entitled to the aid of a court of equity to compel the trustees, if necessary, to apply the moneys which they hold in trust to the payment of the bonds. His only remedy would have been in equity. The only party which he could have sued at law would have been the Beacon Dam Company, and that is insolvent. The peculiar remedy for a *cestui que trust* against a trustee, is an application to a court of chancery.

Again, as Abbott lodged these bonds with the Broadway Bank as collateral security for advances made by the bank, he

would have had a right to call on the bank for an account, and if necessary to petition a court of chancery to compel a disclosure by the bank. Even if the action of account would have been his appropriate remedy against the bank it is now provided by the statute law of this state that a petition in chancery will also lie.

The main question in the case then is, whether Candee by his factorizing suit has become vested with Abbott's equitable rights. Previous to the statute law of 1850, (Comp. 1854, p. 139,) we suppose he would not. *Judah* v. *Judd,* 1 Conn., 309. He would only have acquired the legal rights of Abbott against the Beacon Dam Company. It has not been denied that by the factorizing suit he attached the interest which Abbott had in the bonds, nor that Abbott had an interest in them although they had been lodged with the bank. The statute of 1850 above referred to gives to the attaching creditor the security which belongs to the debt attached. The inference then is irresistible, that the petitioner has entitled himself to the same claim against the trustees which Abbott had. He has indeed a stronger claim to the interposition of a court of chancery than Abbott. In the factorizing suit he left no copies with the trustees, and if he had they would have been unauthorized and unavailing. The trustees were under no obligations to regard his factorizing suit, as the proceedings in that case made no mention of the bonds, and if they had seen the copy left with the Beacon Dam Company they would not have been apprised that the petitioner claimed the security held by the trustees. The only remedy for the petitioner was to apply for an injunction to prevent the trustees from paying over the money. The claim of the petitioner is strengthened by the fact that unless enjoined the trustees might pay over the money into a different jurisdiction and compel the petitioner to resort to a court there, in order to obtain his just rights.

Again, the petitioner, by force of the same statute, has acquired all the equitable rights of Abbott against the Broadway Bank, and we have seen that he would have had the right to compel the bank to disclose.

It has been urged that this application is premature—that,

at all events, the petitioner had no right to call upon a court of equity till he had obtained a judgment. But we know of no such limitation to the power of a court of chancery. If it were so, judgments would often be rendered worthless, through a loss of the only security which would render them of any avail. It can not be doubted that if a creditor should attach a wood lot, he could, while the suit should be pending, enjoin the debtor from cutting off the wood.

It has been insisted further, that the proper remedy is to allow the Broadway Bank to collect the bonds, and then to proceed against it to recover the surplus above its demands. But we see no necessity or propriety in compelling the petitioner to pursue such a course. The money to which he will be entitled, if he recovers a judgment, is in this state. The bank has no claim to any money in the hands of the trustees, except the amount of its demands against Abbott, which the trustees are ready to pay, and to which payment the petitioner does not object. What good reason can be given why the surplus should go out of the state into the coffers of the bank, for no purpose whatever except to compel the petitioner to go out of the state, and institute a new process there to compel the bank to pay over the money.

We advise that the demurrer be overruled.

In this opinion the other judges concurred.