DAVID ARMSTRONG AND ANOTHER *vs.* RUEL P. COWLES AND
OTHERS.

The statute with regard to joint stock corporations (Gen. Statutes, tit. 17, ch.
2, part 8, art. 4, sec. 3,) provides that the officers of such a corporation who
shall intentionally neglect to perform any of the duties required by the act,
shall be jointly and severally liable for all its debts contracted during the time
of such neglect. The defendants were directors of such a corporation and
had made themselves liable to its creditors under this act. The plaintiffs had
a claim against a creditor of the corporation, on which they brought suit and
factorized the corporation, and afterwards obtained judgment against the cor-
poration upon a scire facias. The judgment not being paid, they brought an
action under the statute against the defendants, upon their personal liability
for the debt attached. Held—

1. That the indebtedness of the corporation upon the judgment in scire facias
was not a "debt contracted" by the corporation within the meaning of the
statute.

2. That the rights of the plaintiffs' original debtor against the defendants did
not constitute a claim which the plaintiffs could enforce by an action at law.

3. That if those rights constituted a "security" for the debt attached, to the
benefit of which the plaintiffs became entitled under the provisions of the act
of 1850, (Gen. Statutes, tit. 19, ch. 2, sec. 37,) yet that the benefit of this
security could be obtained only by a proceeding in which all the equities
between the original debtor and the defendants could be adjusted.

ACTION upon the statute (Gen. Statutes, p. 314, sec. 3,) to
enforce a personal liability of the defendants as directors of
a joint-stock corporation for a debt of the company; brought
to the Court of Common Pleas of New Haven County, and
tried to the court upon the general issue before *Robinson, J.*

Upon the trial the plaintiffs claimed, and offered evidence
to prove, that the New England Gas Carbonizing Company
was organized under the provisions of the act in reference to
joint stock companies, on the 19th of November, 1872, and
commenced business on the 9th of December, 1872; that the
defendants were directors from the time of the organization
of the company, and still continued such; that they intention-
ally failed to file their certificate of the organization of the
company, as required by statute, with the secretary of the
state, and with the town clerk of the town within which the
company was located, from the 19th day of November, 1872,

to the 22d day of June, 1874; that on the 15th day of January, 1873, the company became indebted to one Samuel Whitney in the sum of $1,000 for a patent-right bought of him by the company, and for services rendered by him to the company; that at that time Whitney was indebted to the plaintiffs in the sum of $400, and that, on the 26th of March, 1873, the plaintiffs, in order to secure the same, brought an action of assumpsit against Whitney, in which suit they caused the debt from the company to Whitney to be attached by process of foreign attachment, and on the 28th of April, 1873, recovered judgment by default against Whitney, for the sum of $404 damages and $22.58 costs; that execution was issued, and demand made upon Whitney and the garnishees in all respects as provided by law; and that the plaintiffs on the 22d of May, 1873, commenced suit by process of *scire facias* against the company, alleging the facts above mentioned, which suit was brought to the June term, 1873, of the Court of Common Pleas of New Haven County, in which suit the company appeared by their attorney, and the suit came by regular continuances to the next October term, when the plaintiffs recovered judgment by default against the company for the sum of $437.24 debt and $32.78 costs, which is the judgment set forth in the present suit.

And the plaintiffs claimed, and requested the court to rule, that the judgment so obtained was a "debt contracted" within the meaning of section 3, title 17, article 14 of the General Statutes of 1875, and of title 7, section 416 of the Revision of 1866, and that the defendants were liable therefor by virtue of their failure to file the required certificate; also that, by virtue of the proceedings by foreign attachment and *scire facias*, the plaintiffs had become vested with the rights of Whitney, the original creditor of the company, and were therefore entitled to recover against the defendants. But the court overruled these claims, and ruled that the judgment was not a debt contracted within the meaning of the statute, and that the plaintiffs were not so vested with the rights of the original creditor that they could recover against the defendants, and rendered judgment for the defendants.

The plaintiff moved for a new trial for error in this ruling of the court.

The statute above referred to is recited in the opinion.

*T. H. Russell*, in support of the motion.

1.  A judgment comes within the strict, literal and ordinary meaning of a "debt contracted." The word *contracted* has no necessary connection with the noun *contract*, either in derivation or in common use. In the common and legal usage of the word, it means simply a debt to which a party becomes legally subjected. A judgment, however, is a debt contracted, in the sense that it arises out of a contract of the very highest nature known to the law. Freeman on Judgments, § 1; Chitty on Cont., 2; 2 Black. Comm., 465; *Morse* v. *Toppan*, 3 Gray, 411. The judgment debt is not the old debt in a new form, but a new debt coming into existence at the time of the judgment. It differs essentially from the original ground of action in its nature and amount, confers different rights, and is enforced by different remedies. Freeman on Judgments, § 215. The old ground of action, or claim, is merged and destroyed in the most absolute and complete sense, and can no longer form the basis of any legal proceedings. Freeman on Judgments, §§ 217, 228. A claim against stockholders is merged by a judgment against a corporation. *Bangs* v. *Watson*, 9 Gray, 211; *Handrahan* v. *Cheshire Iron Works*, 4 Allen, 396. A judgment on an unliquidated claim for damages is a debt. *Mill Dam Foundry* v. *Hovey*, 21 Pick., 454.

2.  Even if the judgment is not in itself a debt, enforcible under the act, yet the *scire facias* judgment is such an appropriation of the original debt, with all its incidents, that the plaintiffs can bring this action. *Norfolk* v. *American Steam Gas Co.*, 103 Mass., 163, and 108 Mass., 404. It is the object of the statutes in reference to foreign attachment, to subject the debtor's rights of action to the payment of his debts, in the same manner and to the same extent that his tangible property now is subject, and the *scire facias* creditor is entitled to all the securities and remedies incident to the debt. Gen. Statutes, p. 408, sec. 37; *Candee* v. *Pennimann*, 32

Conn., 238. The proceedings by foreign attachment consti-̇ tute a lien not merely on the amount due, but on the debt itself, which, by the *scire facias* proceedings, is finally vested in the plaintiff, as by a foreclosure of an ordinary lien, or in other words, the proceedings constitute an assignment, by act of law, of the debt with all its incidents. The attaching creditor is subrogated to the rights of the original creditor. *Perkins* v. *Parker*, 1 Mass., 117; *Wallace* v. *McConnell*, 13 Pet., 151.

3. The statute, though penal, is remedial in the largest sense of the word, and based upon important reasons of public policy. It ought, therefore, to be liberally construed to effect its object, not defeated by technicalities.

*W. W. Stone,* contra.

LOOMIS, J. The New England Gas Carbonizing Company was formed and organized under the statute relating to joint-stock corporations in November, 1872, and transacted business as such until June, 1874, and the defendants, being officers and directors of the company during all that time, intentionally neglected to file certificates of organization with the secretary of the state and the town clerk, as required by section 401, title 7, page 171, of the General Statutes of 1866.

In January, 1873, the company became indebted to one Samuel Whitney in the sum of one thousand dollars, and Whitney about the same time became indebted to the plaintiffs in the sum of four hundred dollars. In March, 1873, the plaintiffs brought a suit against Whitney, in which, by process of foreign attachment, they attached the debt due from the corporation to Whitney, and having obtained judgment thereon, execution issued and demand was made of Whitney and the garnishee in due form of law. Afterwards scire facias was brought by the plaintiffs against the corporation and judgment was obtained thereon in October, 1873, which judgment has never been paid or satisfied. The present action is brought to recover the amount of such judgment from the defendants, pursuant to the provisions of section 416, title 7,

page 174, of the General Statutes of 1866, which provides that, "if the president, directors or secretary of any such corporation shall intentionally neglect or refuse to comply with the provisions of this act, and to perform the duties therein required of them respectively, such of them as so neglect or refuse shall be jointly and severally liable, in an action founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal."

The first question is, whether the plaintiffs' judgment in the scire facias can be regarded as "a debt contracted" within the meaning of the above statute.

We think not. There cannot be a "debt contracted" without two or more contracting parties, one of whom in this case must be the corporation. The phrase therefore necessarily implies some act on the part of the corporation with some party dealing with it, whereby an obligation is incurred, the company receiving and the other party giving credit on the faith of their solvency and proper organization as a corporation; and if the directors intentionally withhold a knowledge of the condition of the corporation, persons dealing with them and giving them credit may have protection by resorting to the personal responsibility of the directors for the debts so contracted.

A further reason for giving this construction to the statute may be found in the absurd and unjust result to which the construction claimed by the plaintiffs would directly lead. The liability of the defendants, it is conceded, can be only for debts contracted during the time of the neglect referred to. If then the plaintiffs' judgment on the scire facias was a "debt contracted," as the plaintiffs claim, the time when it was so contracted was when the judgment was rendered and the corporation became liable to pay it. Now suppose that when Whitney's debt against the corporation was contracted the officers had not been in default, but they were in default at the time the judgment was obtained, the result would be that while the corporation alone would be liable to Whitney for his debt against them, yet the plaintiffs, having sued

Whitney and attached the same debt due from the corporation to him, could make the directors liable to them, when there would have been no liability whatever to Whitney.

It is not claimed that the facts of the case bring it within the statute thus construed. The corporation never had dealings with the plaintiffs, never invited them into their confidence, and never sought or received any credit from them.

There is also a like want of privity between the plaintiffs and defendants. It was a matter of entire indifference to the plaintiffs whether the directors complied with the statute or not. They were neither damaged by non-compliance with the statute, nor benefited by compliance. It seems clear that the plaintiffs cannot stand on any merits of their own, or upon any thing in their own relation to the corporation or the defendants.

And this brings us to the second inquiry: whether the plaintiffs can stand in the shoes of Whitney and enforce by an action at law in their own names such rights as he had against these defendants?

We do not say that the plaintiffs have no remedy through Whitney; on the other hand we incline to think there is one. But we hold that the present suit is inadequate for the purpose. We do not regard this action as predicated at all upon Whitney's right to recover his debt from the defendants. In all the counts the action is brought expressly upon one and the same provision of the statute to which we have already referred. All the counts except the last are based on the statute, minutely referred to as title 17, part 8, art. 4, sec. 8, of the Revision of 1875, and the other count is based on title 7, sect. 416, of the Revision of 1866; and in all the counts it is the plaintiffs' own debt (to wit, the judgment in their favor on scire facias,) against the corporation that they attempt to bring within the statute as a debt contracted while the defendants as directors were in default. It is true that incidentally in setting forth the process of foreign attachment and the steps by which they obtained judgment, they refer to the debt from the corporation to Whitney, which they factorized, but it is obvious that they claim the benefit of the statute on their

own account; in other words they stand in their own shoes and not in Whitney's. They nowhere claim to be subrogated to the rights of Whitney, they neither count upon nor refer to the act of 1850 as giving them Whitney's right to sue the defendants, nor do they by any averment claim to be the assignees and equitable bonâ fide owners of any chose in action in favor of Whitney and against the defendants.

Independently of the aid which the statute passed in 1850 may furnish, we suppose on the authority of *Judah* v. *Judd,* 1 Conn., 309, that the plaintiffs by virtue of their process of foreign attachment and the judgment in the action of scire facias acquired no right except to collect their debt against Whitney out of the property of the corporation; and that the proceedings did not operate as an assignment or transfer to them of Whitney's right to sue the defendants. But by the act of 1850 it was provided "that the plaintiff in foreign attachment shall be entitled to all the security which his debtor has for the debt attached." General Statutes, Revision of 1866, p. 74, sect. 322. In *Candee* v. *Penniman,* 32 Conn., 228, the benefit of the statute was given to an attaching creditor, who upon a bill in equity was protected in his right to the funds holden as security for the debt attached.

Assuming for the present purpose that Whitney's right to sue the defendants and collect of them his debt against the corporation, was a "security" within the meaning of the statute, and that by means of the premises and by force of the statute the plaintiffs became subrogated to the rights of Whitney, the remedy instituted ought to be in such form as that all the equitable rights as between the defendants and Whitney could be shown, adjusted and settled. As the plaintiffs have no independent claim against the defendants, if, before the attachment of this debt, Whitney had sold or discharged his right of action against the defendants, or the defendants had any other superior equities against the plaintiffs, it would prevent the plaintiffs from recovering.

A new trial is not advised.

In this opinion the other judges concurred.